## Beitel v. Mortgage Finance Corporation.

*Corporations—Receivers—Discretion of directors—Refusal to bring suit—Officers—Fraud.*

1. A receiver will not be appointed for a solvent corporation for the purpose of collecting claims against officers of the company, merely because the board of directors, in the exercise of its discretion, has refused to bring action for the collection of such claims.

2. A receiver will not be appointed for a solvent corporation on the ground of mismanagement or derelictions by former officers, when it appears that there is no danger of the assets of the corporation being jeopardized by its present officers.

3. The payment of regular salaries to officers of a corporation by themselves, without express authorization of the board of directors, is not fraudulent, where there has been no attempt at concealment and where the amounts drawn were regularly reported to the board.

4. A receiver will not be appointed, merely because there have been differences of opinion, criticism and dissatisfaction on the part of a minority of the stockholders and directors.

Bill in equity for appointment of receiver. C. P. Northampton Co., July T., 1923, No. 1.

*Calvin F. Smith*, for plaintiff; *W. H. Kirkpatrick*, for defendant.

McKEEN, J.—The bill in this case was filed June 11, 1923, to which an answer was filed by defendant denying the material allegations contained in the bill. The case was heard as of final hearing without the appointment of a temporary receiver. Upon agreement of counsel, neither bill nor answer was printed in accordance with the equity rules.

From the evidence and the admissions contained in the pleadings the following facts are found:

Plaintiff is a stockholder and director of defendant corporation. Defendant corporation was duly incorporated under the laws of the State of Pennsylvania. Plaintiff is the owner of eighty shares, of the par value of $50 each, of the preferred stock of defendant corporation, and is the owner of forty shares, of the par value of 10 cents each, of the common capital stock of the defendant corporation. E. R. Yarnelle, H. H. Mitchell, Otho M. Graves, John H. Reinhold, I. B. Hochman, Richard O. Beitel, A. L. Herster, Pinkney W. Love, Bolton J. Love, A. T. Bowlby, R. H. Armstrong and H. F. Yetter were the directors of the defendant corporation.

The directors of the defendant corporation organized for the year 1923 by electing H. H. Mitchell president, Arthur T. Bowlby secretary and I. B. Hochman treasurer. Plaintiff became a director of defendant corporation on or about Jan. 27, 1923, and has been a stockholder of defendant corporation since 1921. Prior to Jan. 27, 1923, Pinkney W. Love was a director and president, and since Jan. 27, 1923, was the vice-president and general manager of defendant corporation. Prior to April 30, 1922, Pinkney W. Love, while president and a director of defendant corporation, paid himself the sum of $6577.27 out of its funds and assets by checks signed by himself and his brother, Bolton J. Love, treasurer of defendant corporation. The sum of $6577.27 was paid out of the funds of defendant corporation to Pinkney W. Love without any resolution or authority from the board of directors. On April 30, 1922, Pinkney W. Love signed and executed a promissory note in the sum of $6577.27, payable at the Easton National Bank to the order of defendant corporation, to cover the money received by him from the assets of defendant corporation.

On June 13, 1922, the following notes were placed in the treasury of the defendant corporation to cover advances: J. E. Hauseman, $1029.11; H. B.

Boyle, $410; E. F. Miller, $341; R. W. Ammel, $533; Pinkney W. Love, $6577.27. Pinkney W. Love, as an officer and director of defendant corporation, reported on June 13, 1922, that said notes were placed in the treasury of the company for the purpose of covering advances made to said parties. These notes which were placed in the treasury of the defendant corporation are worthless and uncollectible by an action at law.

On Dec. 20, 1921, the board of directors of the defendant corporation, including Pinkney W. Love, voted to pay a dividend to the stockholders of the corporation. This dividend paid to the stockholders in December, 1921, was paid out of capital and not out of profit earned by defendant corporation. On April 3, 1923, at a meeting of the board of directors of defendant corporation, three different motions were made by certain members of the board of directors to collect the notes signed by Pinkney W. Love and others, given to and held by defendant corporation for the various amounts mentioned. A majority of the board of directors voted against the motions.

Plaintiff instituted this action under an agreement between himself, A. T. Bowlby, R. H. Armstrong, I. B. Hochman and John H. Reinhold, all of whom are directors of the defendant corporation. At the time of the filing of the bill, the following were officers of defendant corporation: H. H. Mitchell, president; Pinkney W. Love, vice-president; R. O. Beitel, vice-president; Otho M. Graves, vice-president; I. B. Hochman, treasurer; A. T. Bowlby, secretary. Since the filing of the bill, H. H. Mitchell resigned as president of the corporation and, at a meeting held Aug. 6, 1923, John Rice was elected president by the board of directors.

Beginning March 3, 1921, Pinkney W. Love and B. J. Love drew from the treasury the sum of $100 per week each and continued such payments until Pinkney W. Love had received from the company the sum of $5200, which was sometime in August, 1922. These payments were made by checks signed by Pinkney W. Love as president and countersigned by B. J. Love as treasurer of the company. Each payment, as and when made, was entered upon the books of the company with the date and amount, and appeared upon the books as having been paid to Pinkney W. Love for commissions and to B. J. Love for salary. These payments were not made by any authorization of the board of directors.

From April, 1921, monthly statements were submitted to the board of directors by B. J. Love, treasurer, showing the total amount paid out each month for salaries, commissions, traveling expenses and all other expenditures made by defendant corporation. The monthly statements included the commissions and salaries which were paid from time to time to Pinkney W. Love and Bolton J. Love. A regular monthly meeting of the defendant corporation was held Jan. 4, 1922, at which meeting the following directors were present: John Rice, R. H. Armstrong, Pinkney W. Love, Bolton J. Love and A. T. Bowlby. At this meeting a statement of the treasurer, dated Dec. 31, 1921, was presented and accepted. The statement included as an asset organization expenses, etc., in the sum of $13,310.82, which included part of the salaries, advances and commissions in question. On Jan. 9, 1922, the first annual meeting of the stockholders of defendant corporation was held at its office in Easton, Pennsylvania, and the following stockholders were present: P. W. Love, Bolton J. Love, J. E. Hauseman, William H. Milchsack, Richard Beitel, plaintiff, R. H. Armstrong and A. T. Bowlby. At this meeting the report of the treasurer, Bolton J. Love, of Dec. 31, 1921, was approved unanimously.

There is no evidence of any misconduct, mismanagement or waste of corporate assets by the present officers of the defendant corporation since their

election, Jan. 27, 1923. Plaintiff has expressed confidence in the present officers of the company, and believes that there is no danger of anything happening to the corporate assets under their management. The defendant corporation is solvent.

Under this statement of the facts, we are compelled to find the following conclusions of law:

1. The property of defendant corporation is not being jeopardized by any mismanagement of the present directors and officers thereof.

2. The dissensions complained of by plaintiff among the board of directors of the defendant corporation are insufficient to warrant the appointment of a receiver.

3. Plaintiff is not entitled to the relief prayed for in the bill.

## Discussion.

The question involved under the facts as determined by the court is whether a receiver shall be appointed for a solvent corporation for the purpose of collecting claims against officers, directors and employees of the company. The appointment of a receiver for a solvent corporation is a duty which should not be performed unless, after a careful examination of all the facts in the case, the court is convinced that, under the circumstances presented, it is an absolute necessity, and that irreparable injury would result from the refusal to do so. In support of the bill, the court's attention is directed to alleged dissensions and disagreements among the various directors of the corporation and the mismanagement of its affairs. It is further alleged by plaintiff that, unless the corporation and the corporate funds are protected, the rights of all the stockholders and creditors will be jeopardized by the mismanagement of the directors, who have obtained control of the corporation by reason of ownership of approximately 80 per cent. of the corporate stock. While the evidence discloses differences of opinion, criticism and dissatisfaction on the part of a minority of the stockholders of the defendant corporation, the principal cause of dissension appears to be the refusal of the board of directors to collect certain notes in the possession of the defendant corporation. The notes in question, although worthless and uncollectible, appear to have been accepted by the defendant corporation and carried in the monthly statements as assets. One note in particular is called to the attention of the court as having been given by an officer of the company in payment of moneys received by him from the treasurer of the company without authorization by the board of directors. These are matters entirely within the discretion of the board of directors of the defendant corporation. "It frequently happens that the corporation has a cause of action against a third party which the directors think best not to press, or that the corporation is sued and the directors think best not to defend, or, where an action is pending, the directors decide to compromise the matter. The judgment of the directors may, in the opinion of a stockholder, be erroneous, and yet it cannot be controlled or changed by the stockholders except by refusing to re-elect the directors to office. The stockholder cannot go into court and attempt to change the policy of the directors in the management of the suit. A stockholder cannot control the discretion of directors as to whether to bring a suit or not:" 4 Cook on Corporations, § 750.

The plaintiff, who is a stockholder of the defendant corporation, is requesting the court for the appointment of a receiver to collect these claims which are uncollectible at law, and for the further purpose of carrying on the business of the defendant corporation, or to wind up its affairs under a decree of

the court, and for the other purposes set forth in the prayer of the bill. The attention of the court was also directed to the declaration of an illegal dividend declared by the defendant corporation Dec. 20, 1921. From the evidence it appears that this dividend was declared and paid out of capital and not out of profits earned by the defendant corporation. This act, while established by the evidence, has not been made a specific averment in the bill as cause for the relief prayed for. It appears that the plaintiff instituted the present bill in equity under an agreement with four other directors of the defendant corporation, two of whom, Messrs. Bowlby and Armstrong, were directors at the time of the declaration of the illegal dividend. The question of recovering the illegal dividends has not been raised by the pleadings, nor has it been made a specific averment for the appointment of a receiver, and, therefore, requires no further discussion. And, further, under the assumption that the bill included a specific averment as to the declaration of an illegal dividend, under the law, it would be unnecessary to appoint a receiver for the purpose of obtaining a restoration of the amount of money illegally distributed. The rights of the corporation may be asserted and enforced in a suit by stockholders, by joining all the alleged wrongdoers with the corporation as defendants.

There is no present danger of the assets of the defendant corporation being jeopardized by any action on the part of its officials. The plaintiff has expressed confidence in the integrity and honesty of the present president of defendant corporation, as well as its treasurer. He further stated in effect that he did not believe there was any present mismanagement or danger of the assets of the corporation being wasted. There can be no question that in the past, under the former management of the defendant corporation, there was mismanagement and unlawful acts performed by the defendant corporation's officials. Salaries, advances and commissions were paid without authorization by the board of directors. These acts on the part of the board of directors, under the facts as determined by the court, are the sole reasons that need be considered in connection with the necessity for the appointment of a receiver. Standing alone, these acts would be insufficient to justify the court in burdening the stockholders of the corporation with the costs of a receivership. "The purpose of the appointment of a receiver is to prevent the commission of present and future frauds and not such as have already been committed and for which there is another remedy:" 5 Thompson on Corporations, § 6347. "A receivership is a preventive, not a punitive measure. Courts do not appoint receivers as a punishment for past derelictions nor because of past dangers. Receivers are appointed because of present conditions and wellfounded apprehensions as to the future:" 4 Pomeroy's Equity Jurisprudence, § 1542; Real Estate Title Ins. and Trust Co. et al. *v.* Allentown & Reading Traction Co., 11 Berks Co. L. J. 189.

It is alleged, however, by plaintiff that the officers of the company having paid themselves commissions, advances and salaries without authorization from the board of directors, these acts were fraudulent. It does not necessarily follow because the acts complained of were illegal that they were also fradulent. "Actual or positive fraud includes cases of intentional and successful employment of any cunning, deception or artifice used to circumvent, cheat or deceive another:" 2 Bouvier's Law Dictionary, 1304. It does not appear from the evidence that the president, Pinkney W. Love, and the treasurer, Bolton J. Love, of defendant corporation drew the commissions, advances and salaries complained of with any attempt of subterfuge or concealment, but did so under the belief that they were entitled to compensation for ser-

vices rendered and under a mistaken belief as to the proper method of obtaining payment. The commissions, advances and salaries received by these officers appeared in the books of defendant corporation from time to time when paid and received, and were included in the monthly statements which were submitted to the directors of the defendant corporation by the treasurer, although not specifically itemized therein. No evidence has been submitted that any stockholder has been denied the right to inspect the books of defendant corporation. It must be presumed, therefore, that the directors of defendant corporation were cognizant of the methods employed by their officers in the conduct of its business. On Jan. 9, 1922, the first annual meeting of the stockholders of the defendant corporation was held, at which plaintiff was present. At this meeting the report of the treasurer, Bolton J. Love, of Dec. 31, 1921, which included part of the salaries, advances and commissions in question, was approved unanimously. The slightest diligence on the part of the stockholders present at the meeting of Jan. 9, 1922, would have disclosed the methods under which the business of the defendant corporation was conducted. Subsequently, the board of directors were cognizant of the fact that notes were given to cover the payment and advances made without authority or authorization by the defendant corporation. These notes were carried by and recognized by the board of directors as assets of defendant corporation, which is evidenced by monthly statements including the amounts thereof and the different motions made by certain members of the board of directors at a meeting held April 3, 1923, to collect the notes signed by Pinkney W. Love and others. Under these circumstances, it cannot be held that the acts of the officers in paying unto themselves salaries, advances and commissions, without authority or authorization, although illegal, were fraudulent, nor can it be held that the refusal of the board of directors to institute suit to recover the amounts due upon the notes was an abuse of official discretion and prejudicial to the interests of the stockholders. The parties presented to the court their requests for findings of fact and findings of law, which, where affirmatively found, are included and made a part of this opinion.

And now, July 28, 1924, this cause came on to be heard at this term, and upon consideration thereof, it is ordered, adjudged and decreed that the relief prayed for in the bill be denied and that the bill be dismissed at the cost of the defendant corporation. The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within thirty days, this decree shall be entered by him as a final decree.

### *Opinion of the court in banc.*

The opinion of the court *in banc*, in dismissing exceptions, was as follows:

The chief, if not the only, ground upon which it is sought to have a receiver appointed is that the board of directors of this corporation has declined, although requested to do so by a minority of the directors, to endeavor to collect by suit certain alleged claims against several officers, directors and employees of the company. There were other grounds alleged in the bill, but all of them, except the one set forth, were met and, in effect, eliminated under the testimony produced at the hearings. For example, the bill alleges that the rights of creditors are endangered, but it appears that the corporation is solvent and has little or no debt. The bill alleges that the rights of the stockholders are being jeopardized, and yet the plaintiff himself testified that he had confidence in the present management of the company. There were other allegations which likewise failed of proof, and, as above stated, the case prac-

tically narrowed down to the matter of the admitted failure of the board of directors to institute suit for the recovery of certain claims outstanding against several of the directors and officers.

There is no dispute that the payments made to themselves by the officers and directors in question out of the company's treasury were technically illegal. They were made in payment of salaries and commissions, openly and with full knowledge of the other directors and of the stockholders, but without previous authorization. There was no attempt at concealment, the amounts paid were duly entered upon the books and reported, and as long as the affairs of the corporation progressed satisfactorily, there was no objection raised on the part of those who are now seeking a receivership. The present board of directors has refused to proceed against these parties, first, because they question both the legal and moral right to do so, in view of the purpose for which the payments were made and the tacit ratification of the payments by those who now urge action; and, second, because judgments against these parties would be wholly valueless. The most that a receiver could do would be to bring suits against and recover judgments and, so far as any benefits to the corporation would be concerned, it would be no better off than it is now. The power to appoint a receiver "should never be exercised in a doubtful case, and when no advantage is to be gained from such appointment or no injury will result from its refusal—in other words, when it does not appear to be necessary:" 34 Cyc., 22. It is difficult to see what the advantage of a receivership would be in this case or what injury will result from its refusal. If it were clear that a suit would be successful and probable that the resulting judgment would be valuable, and especially if creditors existed whose claims might thereby, but not otherwise, be satisfied, the situation would be different. We deem it unnecessary to add anything further to the full discussion of the entire subject, as contained in the opinion handed down by the chancellor who heard the case.

And now, Nov. 24, 1924, this cause came on to be heard at this term by the court *in banc*, and upon consideration thereof, it is ordered, adjudged and decreed that each and every one of the exceptions be dismissed, and that the relief prayed for in the bill be denied, and that the bill of complainant be dismissed at the costs of the complainant.

From Henry D. Maxwell, Easton, Pa.